885 F.2d 866
 30 ERC 1510, 20 Envtl. L. Rep. 20,008
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
TABB LAKES, LTD., a Virginia corporation, Plaintiff-Appellee,
v.
UNITED STATES of America, Henry E. Hudson, United States
Attorney, Lee M. Thomas, Administrator, Environmental
Protection Agency, James M. Seif, Administrator,
Environmental Protection Agency, John O. Marsh, Jr.,
Secretary of the Army, Elvin R. Heiberg, III, Chief, Army
Corps of Engineers, Charles E. Williams, North Atlantic
Division Engineer; J.J. Thomas, Norfolk District Manager,
Defendants-Appellants.
 No. 89-2905.
 United States Court of Appeals, Fourth Circuit.
 Argued July 24, 1989.
Decided Sept. 19, 1989.
 
 David Carlisle Shilton (Donald A. Carr, Acting Assistant Attorney General, Dirk D. Snel, Michael D. Rowe, Department of Justice, Russel Petit, Office of Chief Counsel, U.S. Army Corps of Engineers, Dov Weitman, Office of General Counsel, U.S. Environmental Protection Agency on brief) for appellant.
 Richard Russell Nageotte (Nageotte & Borinsky, P.C. on brief) for appellee.
 Before DONALD RUSSELL, WIDENER, and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an action for a declaratory judgment by a landowner that his property located in York County, Virginia is not within the coverage of Section 404 of the Clean Water Act (CWA), 33 U.S.C. Sec. 1251, et seq. The plaintiff moved for summary judgment on the pleadings and submitted affidavits in support. The ground of its motion was that under the Act the defendants had no jurisdiction over its land. The defendants, on the other hand, moved for summary judgment on the ground that jurisdiction under the Act was evident. The district court, in an excellent opinion, denied the defendants' motion for summary judgment and sustained that of the plaintiff's. The defendants have appealed.
 
 
 2
 The CWA is intended to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." In discharge of this responsibility the Act prohibits the discharge of pollutants into the Nation's waters. Included in this responsibility was "an interim goal of water quality which [would] provide[ ] for the protection and propagation of fish, shellfish, and wildlife ... by July 1, 1983." To accomplish the broad purposes of the Act, it was said to be "essential that discharge of pollutants be controlled at the source." Accordingly, the Act in 33 U.S.C. Sec. 1344 provided for a permit program for the discharge of dredged or fill material into "navigable waters" and devolved the responsibility of developing and administering such program on the Corps of Engineers. The statute defined "navigable waters" as "waters of the United States" without any more specific identification of the term. Initially, the Corps of Engineers construed the Act as covering only waters navigable in fact. United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 123. Responding to complaints from environmentalists, the Corps finally in 1983, issued regulations defining "waters of the United States" in these words:
 
 
 3
 (3) All other waters such as intrastate lakes, rivers, streams, mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce including any such waters:
 
 
 4
 (i) Which are or could be used by interstate or foreign travelers for recreational or other purposes; or
 
 
 5
 (ii) From which fish or shellfish are or could be taken and sold in interstate or foreign commerce; or
 
 
 6
 (iii) Which are used or could be used for industrial purposes by industries in interstate commerce....
 
 
 7
 Congress became concerned that there was no specific provision protecting migratory birdlife. After considerable discussion between Congressional leaders and the agency, General Kelly, acting on behalf of the Department and Corps, issued a letter in the form of a directive to all officers of the Corps of Engineers, in which he specified, among others, this new standard for indicating as sufficient interstate commerce connection to warrant exercise of jurisdiction in the Corps over isolated waters and wetlands. This new identifying standard was:
 
 
 8
 Waters which are used or could be used as habitat by other migratory birds which cross state lines.
 
 
 9
 The issue posed by this appeal is whether this added provision is of a character requiring prior notice and opportunity for comment under 5 U.S.C. Sec. 553 before it becomes valid. The resolution of that issue, as the parties concede, depends on the determination whether the Memorandum issued by General Kelly in behalf of the Secretary and Commanding General of the Corps qualifies as an interpretative rule or general policy statement as under the recognized exception to the requirements of Section 553 of prior notice and opportunity to respond. See Section 533(b)(3)(A). The district court carefully reviewed this issue and concluded that the exception did not apply and that the Kelly Memorandum represented a new material addition to the coverage of the Clean Water Act requiring prior notice and opportunity to comment. See also Jerri's Ceramic Arts v. Consumer Product Safety Comm., 874 F.2d 205 (4th Cir.1989). It accordingly granted the landowner's petition for a declaratory judgment to that effect and entered judgment accordingly. We affirm on the district court's opinion. Tabb Lakes, Ltd. v. United States of America, C/A No. 87-635-N (E.D.Va. Nov. 7, 1988).
 
 
 10
 AFFIRMED.
 
 K.K. HALL, Circuit Judge, dissenting:
 
 11
 I agree with the majority that the only issue of this appeal is whether or not the Corps' new provision regarding the use or potential use of waters by migratory birds meets the interpretive rule exception to 5 U.S.C. Sec. 533(b)(3)(A). Because I believe that it does, I respectfully dissent.
 
 
 12
 Section 553 of the Administrative Procedures Act ("APA") creates an exception to the APA's requirement of notice-and-comment rule-making for rules which are merely "interpretive." 5 U.S.C. Sec. 533(b)(3)(A). While the application of this exception has led to much judicial consternation, there is general agreement that rules which are explanatory and "simply state what the administrative agency thinks the statute means" fit the exception. Jerri's Ceramic Arts v. Consumer Products Safety, 874 F.2d 205, 207 (4th Cir.1989). Conversely, rules which implement a statute and create new legal obligations are substantive and must be promulgated pursuant to the notice-and-comment procedures of the Act. United Technologies Corp. v. E.P.A., 821 F.2d 714, 718-20 (D.C.Cir.1987). Although recognizing these principles, the district court found the provision in question to be substantive largely because it had a "significant effect on public interests." This holding is in error.
 
 
 13
 The significance of a rule's impact has no place in the determination of whether it is substantive or interpretive. See American Postal Workers Union, AFL-CIO v. U.S. Postal Service, 707 F.2d 548, 560 (D.C.Cir.1983), citing 2 K. Davis, Administrative Law Treatise, Sec. 7:8 at 39 (2d Ed.1979). The touchstone of a substantive rule is its creation of new legal obligations. This the Corps' migratory bird provision does not do.
 
 
 14
 The majority's holding to the contrary notwithstanding, this regulation did not impose new legal obligations by expanding jurisdiction under the Clean Water Act ("CWA"). 33 U.S.C. Sec. 1251 et seq. CWA coverage was set by Congress and extends to all "waters of the United States." 33 U.S.C. Sec. 1362(7). The Corps could not have expanded on this definition for the simple reason that Congress intended that the statute be given "the broadest possible constitutional interpretation unencumbered by agency determinations which have been made or may be made for administrative purposes." S.Conf.Rep. 1236, 92nd Cong., 2d Sess. 144 (1972); 1 1972 Legislative History at 281, 327. This regulation merely explains the Corps' interpretation of what contacts with interstate commerce are sufficient to bring a given wetland within the jurisdictional reach of the CWA. Furthermore, under the CWA, the Corps does not have the authority to promulgate rules affecting its jurisdiction. Consequently, even if the Corps wanted to promulgate a substantive rule on this point,[1] it could not. See Postal Workers, 707 F.2d at 558. (A rule cannot possibly be substantive unless an agency has been delegated authority to promulgate such a rule.)
 
 
 15
 For the above-stated reasons, I conclude that the migratory bird provision is an interpretive rule that is exempt from the notice-and-comment procedures of the APA. Consequently, the Corps properly relied upon it in determining that it had jurisdiction over the Tabb Lakes property. Accordingly, I would reverse the district court on this point and remand for further proceedings on the merits of the jurisdiction issue.[2] Because the majority fails to do this, I dissent.
 
 
 
 [1]
 As we have previously noted, in deciding whether a given rule is interpretive, the agency's intent should be considered. Jerri's Ceramics, 874 F.2d at 208. Here it is clear that the Corps intended this regulation to be interpretive. When it was published in the Federal Register, the Corps made clear that its purpose was to "clarify" the definition of "waters of the United States" so as to "clarify the scope of the 404 program by defining the terms in accordance with the way the program is presently being conducted." 51 Fed.Reg. 41217. Plainly, the Corps intended the rule to be nothing more than an explanation of present practices
 
 
 [2]
 In this regard, the record shows that Tabb Lakes' property is not used by migratory water fowl such as ducks or geese, but rather, indicates the presence of migratory robins and finches. On remand, the district court should determine whether the use or potential use of the property by these types of birds provide a sufficient nexus between the property and interstate commerce to bring it within CWA jurisdiction. I am doubtful that it does; however, this is a close question. It is also a question that involves issues of fact appropriate for the district court in the first instance